# EXHIBIT A

FILED
MIAMI COUNTY
COMMON PLEAS COURT

**IN THE COURT OF COMMON PLEAS
MIAMI COUNTY, OHIO**

2020 DEC -8 PH 1: 04

CHAVEZ LEATH )
6607 Park Vista Rd. )
Englewood, OH 45322 )

CASE NO **20 - 3 21** A. MOTTINGER
CLERK OF COURTS

JUDGE: **JEANNINE N. PRATT, JUDGE**

Plaintiff, )
)
v. )
)
RAYTHEON CO. d/b/a COLLINS )
AEROSPACE & UTC AEROSPACE )
101 Waco St. )
Troy, OH 45373 )

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

**Serve Also:** )
Raytheon Co. d/b/a Collins Aerospace )
& UTC Aerospace )
c/o CT Corp. System (Stat. Agent) )
4400 Easton Commons Way, Ste. 125 )
Columbus, OH 43219 )
)
Defendant. )
)

**JURY DEMAND ENDORSED
HEREIN**

Plaintiff CHAVEZ LEATH by and through undersigned counsel, as his Complaint against

the Defendant, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Plaintiff Chavez Leath is a resident of the city of Englewood, Montgomery County, state

   of Ohio.

2. Defendant RAYTHEON CO. d/b/a COLLINS AEROSPACE & UTC AEROSPACE

   ("UTC") is a foreign-incorporated company that conducts business within the state. The

   relevant location of the events and omissions of this Complaint took place was 101 Waco

   St., Troy, OH 45373.

3. UTC is, and was at all times hereinafter mentioned, Leath's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq. and R.C. § 4112.01(A)(2).

4. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

6. Venue is proper pursuant to Civ. R. 3(B)(2), (3) and/or (5).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

8. Leath is a former employee of UTC.

9. At all times noted herein, Leath was qualified for his position with UTC.

10. At all times noted herein, Leath could fully perform the essential functions of his job, with or without a reasonable accommodation.

11. Leath is African-American, placing him in a protected class for his race.

12. Leath worked for UTC as a CNC operator/programmer apprentice from early June 2015, until UTC terminated Leath's employment on or about December 1, 2018.

13. Leath is African American and is disabled due to slipped discs in his back from an accident in or around 2014, placing him in protected classes for his race and disability, respectively.

14. TUC had notice of Leath's disability via a conversation Leath had with his supervisor Brian (LNU, Caucasian), shortly after his hire. Leath followed that conversation by providing UTC notes from his doctor about his disability.

2

15. Leath was still in training school and had not actually completed all the relevant classes yet, so he was originally not supposed to be hired for the position, as both UTC and his union mentioned at the time.

16. Regardless, UTS hired Leath anyway with the understanding that he would complete his course work during his employment.

17. Leath was also told that he would receive a substantial pay raise (roughly doubling his pay from $20/hour to $40/hour) once the courses were all complete.

18. Disparately, this raise never came, though UTC did give similar raises to its Caucasian employees who did complete their course work.

19. In or around autumn 2015, Leath was brought into a meeting with HR. There, he met with Pam Douglas (HR, African American) and another supervisor (name unknown).

20. Douglas, as an African American woman, told Leath that she could not go easy on him for any issues for fear that it would seem improper as they were both the same race.

21. In that meeting, Leath was given written discipline (and a suspension) due to his attendance.

22. Disparately, this discipline was much harsher than UTC's Caucasian employees suffered for the same infractions.

23. Leath pushed back on the discipline as Brian (LNU) had told him he would not receive any punishment because he had provided doctors' notes, but his protests were ignored.

24. After the disciplinary meeting, Leath spoke with Brian (LNU) about his punishment.

25. Brian (LNU) then began to yell and cuss at Leath for the issue, saying that Leath had "throw[n] [him] under the bus" for name-dropping him in the HR meeting.

3

26. Also notable, until this point, Leath had received consistently positive performance evaluations.

27. After that point, UTC began to snub him and treat him even worse than before.

28. Going forward, Leath continued to apprentice under other CNC operators, including Nick Peckakowski (Caucasian).

29. Leath, unlike Peckakowski, was generally only running easy machines while Peckakowski was actually being trained by his superiors on the higher-end machines.

30. Leath requested to also receive training on those machines, but UTC refused. This request, disparately was not refused to UTC's Caucasian and able-bodied employees.

31. Peckakowski commented to Leath that he felt that his training and employment was overall better (in that he was allowed to train on numerous machines and learn new skills) while Leath was not, seemingly for no reason.

32. Later in 2015, Rich Rhour (Caucasian) became Leath's supervisor. Almost immediately, Rhour attempted to move Leath out of his department.

33. Leath was then moved to third shift. He complained to his union that this transfer was unwarranted, unrequested, and likely based on his race.

34. Leath cited Dustin Bowers (CNC operator, Caucasian), one of his equals at UTC, as a disparate example in this protected complaint.

35. The union attempted to help Leath, but no progress was made.

36. Once school reopened for the year, UTC allowed many apprentices to move back to first shift to help with their coursework. Disparately, UTC did not offer the same to Leath.

37. In or around early 2016, a member of Leath's family passed away.

4

38. As a result of the emotional turmoil this caused, paired with his back problems, Leath began to face other medical problems associated with the pain pills he was prescribed.

39. Leath, at the time, was still receiving nearly all the blame from UTC for any issues that happened around him.

40. Leath repeatedly complained about this disparate treatment, constituting yet another round of protected complaints.

41. In or around mid-2017, Leath applied for and began receiving intermittent FMLA leave from UTC.

42. At that point, Leath was the only apprentice at UTC at his level that still had not received the previously promised pay raise. Leath's Caucasian counterparts, however, did.

43. By this point, UTC was treating Bowers as if he were the golden boy.

44. Bowers was allowed to move into a full CNC operator position despite not completing the full schooling. Again, disparately, Leath was not.

45. UTC repeatedly asked about Leath's schooling, something the company disparately did not do for its Caucasian employees, including Bowers.

46. Also notable, at that time, Leath was falsely reported for watching Netflix during working hours.

47. Another employee (name unknown, CNC operator in the heat-treat department, Caucasian, male) was actually watching Netflix at work throughout his shifts, but the Caucasian was never spoken to about it, to Leath's knowledge.

48. Later in 2017, Leath made errors on around 40 different parts he was making, resulting in a suspension.

49. At the time, he was under April (LNU, supervisor, African American).

5

50. Disparately, a Caucasian CNC operator (name unknown) had messed up around 300 different parts but received no discipline for it. Leath continued to be blamed for every issue around him by UTC, regardless of his involvement.

51. Throughout the above, Leath made repeated complaints about his pay and work disparity compared to his Caucasian coworkers.

52. In response, UTC, rather than bringing Leath up to the level of Bowers, instead decreased Bowers' pay.

53. Around the same time, Leath had another Caucasian supervisor who demanded that Leath, and Leath alone, stand when speaking with the supervisor.

54. Only Leath, the African American employee, had to stand as a sign of respect. No Caucasian employees did.

55. Leath complained about this to his union and the supervisor stopped forcing Leath to stand, but the other discriminatory actions the supervisor took continued.

56. In or around October 2017, Leath was finally allowed to return to first shift, and he was allowed to deal with his school situation.

57. Seemingly, Leath's complaints were finally being addressed. However, around the same time, UTC was performing an inventory count with a large number of employees.

58. Jessica (LNU, Caucasian) was picking the groups for the count and placed all of the African American employees, regardless of department or any other work-related reason, into the same group together. UTC's union pushed back on this, then the issue was rectified.

59. In or around early 2018, UTC's union elected a new vice president (name unknown, Caucasian, male, "VP").

6

60. The new VP was a serious step downward for Leath at UTC, he was known to ride a Harley Davidson with an obvious Confederate Battle Flag (and a bandana with the same) to work consistently.

61. The new VP was well-known within UTC as racist against African Americans. This change caused even greater issues for Leath at work.

62. Unfortunately, in or around late January 2018, Leath had to take short-term disability leave because of his medical conditions.

63. This medical leave continued until the end of Leath's employment. He was fired before his short-term disability transitioned into long-term.

64. Leath only became aware of the end of his employment when his insurance was canceled on or about December 1, 2018.

65. Thus, Leath's termination was effective on or about December 1, 2018.

66. Defendant's termination of Leath was an adverse employment action against him.

67. Defendant's purported reason(s) for Leath's termination was pretextual.

68. Defendant actually terminated Leath's employment discriminatorily against his race, disabilities, and/or in retaliation against his protected complaints, and/or in a retaliatory effort against his FMLA.

69. As a result of the above, Leath has suffered damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

70. Leath restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Leath is African-American, and thus is in a protected class for his race.

7

72. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

73. Defendant treated Leath differently than other similarly situated employees based upon his race.

74. Defendant's termination of Leath was an adverse employment action against him.

75. Defendant's purported reason(s) for Leath's termination was pretextual.

76. Defendant actually terminated Leath's employment due to his race.

77. Defendant violated R.C. § 4112 *et seq*. by terminating Leath because of his race.

78. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Leath differently from other similarly situated employees outside his protected class.

79. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Leath's race.

80. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Leath's race.

81. Leath incurred emotional distress damages as a result of Defendant's conduct described herein.

82. As a direct and proximate result of Defendant's acts and omissions, Leath has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

83. Leath restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

84. Leath is in a protected class for his disabilities (described *supra*).

8

85. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

86. Defendant treated Leath differently than other similarly situated employees based upon his disability.

87. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Leath differently from other similarly situated employees outside his protected class.

88. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Leath' disability.

89. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Leath' disability.

90. Leath incurred emotional distress damages as a result of Defendant's conduct described herein.

91. As a direct and proximate result of Defendant's acts and omissions, Leath has suffered and will continue to suffer damages.

## COUNT III: RETALIATION

92. Leath restates each and every prior paragraph of this complaint, as if it were fully restated herein.

93. As a result of the Defendant's discriminatory conduct described above, Leath complained of the discrimination, harassment, and disparate treatment he was experiencing.

94. Subsequent to Leath's complaints to management about harassment, bullying, and disparate treatment toward him, Defendant took adverse employment actions against Leath, including terminating his employment.

9

95. Defendant's actions were retaliatory in nature based on Leath's opposition to the unlawful discriminatory conduct.

96. Pursuant to R.C. § 4112 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

97. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Leath, he has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: RETALIATION IN VIOLATION OF THE FMLA

98. Leath restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. During his employment, Leath qualified for and attempted to take FMLA leave.

100. Defendant knew Leath took FMLA leave.

101. After Leath utilized his qualified FMLA leave, Defendant retaliated against him.

102. Defendant terminated Leath's employment.

103. Leath's termination was an adverse employment action against him.

104. Defendant's proffered reason for Leath's termination was pretextual.

105. There was a causal link between Leath's medical leave under the FMLA and Defendant's termination of Leath's employment.

106. Defendant actually terminated Leath for his FMLA use.

107. Defendant retaliated against Leath by terminating his employment.

108. Defendant's actions show that it willfully retaliated against Leath in violation of U.S.C. § 2615(a).

10

109.     As a direct and proximate result of Defendant's wrongful conduct, Leath is entitled
to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and
reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Leath demands from Defendant the following:

a) Issue a permanent injunction:

   i.   Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii.  Requiring allocation of significant funding and trained staff to implement all
        changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in
        discrimination, harassment, or retaliation, and failed to meet their legal
        responsibility to promptly investigate complaints and/or take effective action to
        stop and deter prohibited personnel practices against employees;

   iv.  Creating a process for the prompt investigation of discrimination, harassment,
        or retaliation complaints; and

   v.   Requiring mandatory and effective training for all employees and supervisors
        on discrimination, harassment, and retaliation issues, investigations, and
        appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative
documentation;

c) An award against each Defendant for compensatory and monetary damages to
compensate Leath for physical injury, physical sickness, lost wages, emotional distress,

11

and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Leath's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Matthew G. Bruce (0083769)         0086975
Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM, LLC
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Chavez Leath*

12

## JURY DEMAND

Plaintiff Chavez Leath demands a trial by jury by the maximum number of jurors permitted.

Matthew G. Bruce (0083769)

FILED
MIAMI COUNTY
COMMON PLEAS COURT

2020 DEC -8 PM 1: 04

JAN A. MOTTINGER
CLERK OF COURTS

20 - 321

Chavez Leath
_____
Plaintiff

v.           Case Number _____

Ratheon CO, d/b/a COLLINS AEROSPACE & UTC AEROSPACE
_____
Defendant

JEANNINE N. PRATT, JUDGE

## INSTRUCTIONS FOR SERVICE

**To Clerk:** You are hereby requested to make service upon the following by:

- [ ] Fed Ex
- [✓] Certified Mail
- [ ] Regular Mail
- [ ] Sheriff Service (Personal)
- [ ] Sheriff Service (Personal or Residential)
- [ ] Personal Service process server: _____

Parties to be Served:

| | |
|---|---|
| Name: RAYTHEON CO. d/b/a COLLINS AEROSPACE & UTC AEROSPACE | Name: _____ |
| Address: 101 Waco St. | Address: _____ |
| Address: _____ | Address: _____ |
| City: Troy  State: OH  Zip: 45373 | City: _____ State: _____ Zip: _____ |
| Name: Raytheon Co. d/b/a Collins Aerospace & UTC Aerospace | Name: _____ |
| Address: c/o CT Corp. System (Stat. Agent) | Address: _____ |
| Address: 4400 Easton Commons Way, Ste. 125 | Address: _____ |
| City: Columbus  State: OH  Zip: 45219 | City: _____ State: _____ Zip: _____ |

s/ Matthew G. Bruce            0083769
Attorney for Plaintiff          Supreme Ct.#

## Court of Common Pleas, Miami County, Troy, Ohio

# SUMMONS ON COMPLAINT

Rule 4 1970 Ohio Rules of Civil Procedure

Case No. **20 CV 00321**

Chavez Leath
6607 Park Vista Rd
Englewood, OH 45322

*Plaintiff(s)*

*Vs.*

Raytheon CO
1101 Waco St
Troy, OH 45373

*Defendant(s)*

To the above named Defendant(s):

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the Plaintiff(s) attorney, or upon the Plaintiff(s) if he/she has no attorney of record, a copy of your answer to the complaint within 28 days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the Plaintiff(s) Attorney is as follows:

Matthew G Bruce  11260 Chester Road Suite 825  Cincinnati, OH 45246

(216)291-0244

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

**Jan A. Mottinger – Clerk of Courts**

Date:  **December 8, 2020**

By: Beth a Laiber

*Deputy*

CRTR3295-CR

**OHIO**
**Miami County Common Pleas Court**

Page 1

Issue Date 12/08/2020 to 12/08/2020

2020 DEC -9 AM 7: 35

| Tracking Number | Case Number | Party | Name | Address |
|---|---|---|---|---|
| 71902785905005242112 | 17 TL 02233 | EMP | Tech Metals | 345 Springfield St<br>Dayton, OH 45402 |
| 71902785905005242129 | 19 TL 00747 | EMP | Buckeye Ford of Sidney | Attn: Payroll<br>2343 W Michigan St<br>Sidney, OH 45365 |
| 71902785905005242136 | 18 TL 00973 | BANK | Wright-Patt Credit Union | 2601 W Main St<br>Troy, OH 45373 |
| 71902785905005242143 | 19 TL 00849 | BANK | PNC Bank | Special Services LOC#01-5325<br>4100 W 150th St<br>Cleveland, OH 44135 |
| 71902785905005242150 | 19 TL 00849 | BANK | Huntington National Bank | Attn: GW4W34/Garnishments<br>5555 Cleveland Ave<br>Columbus, OH 43231 |
| 71902785905005242167 | 20 CV 00287 | DFNDT | Brightview Landscapes Llc | 170 Lakeview Drive<br>Monroe, OH 45050 |
| 71902785905005242174 | 20 CV 00197 | DFNDT | McGehee, Joseph | 10920 Us Route 36<br>Bradford, OH 45308 |
| 71902785905005242181 | 20 CV 00321 | DFNDT | Raytheon CO | 4400 Easton Commons Way Ste 125<br>c/o CT Corp System (Stat Agent)<br>Columbus, OH 43219 |
| 71902785905005242198 | 20 CV 00321 | DFNDT | Raytheon CO | 1101 Waco St<br>Troy, OH 45373 |

Summary Entries Total 9

Total Pieces by Sender:_____

Postmaster Per_____

Total Pieces Received by PO:_____

Received By

*End of Report*

Printed: 12/08/2020  3:09 pm          Cases: All - Methods: Cert Mail - Mailer - Tracking Number: All  - Operator: All - Sort By: Tracking Number

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                              ☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

Daniel D. Kelley

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

UEC 1 1 2020

1. Article Addressed to:

Raytheon CO
4400 Easton Commons Way Ste 125
c/o CT Corp System (Stat Agent)
Columbus, OH 43219

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9290 9902 7859 0505 2421 82

2. Article Number (Transfer from service label)

7190 2785 9050 0524 2181

PS Form 3811, (facsimile) July, 2015              Domestic Return Receipt



USPS TRACKING # US OH 430

9290 9902 7859 0505 2421 82

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, ZIP+4® in this box•

MIAMI COUNTY CLERK OF COURTS
MIAMI COUNTY COMMON PLEAS COURT
3RD FLOOR SAFETY BUILDING
201 W MAIN ST
TROY OH 45373-2363

# EXHIBIT B

# IN THE COURT OF COMMON PLEAS
# MIAMI COUNTY, OHIO

CHAVEZ LEATH,

                 Plaintiff,

      v.

RAYTHEON CO. d/b/a COLLINS
AEROSPACE & UTC AEROSPACE.

                 Defendant.

Case No. 20 CV 00321

Judge: Jeannine N. Pratt

**DEFENDANT'S NOTICE OF FILING OF
NOTICE OF REMOVAL TO THE UNITED
STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF OHIO, WESTERN DIVISION**

TO:     Clerk of Court
         Court of Common Pleas
         201 W. Main Street
         Troy, OH 45373

         Matthew G. Bruce, Esquire
         Evan R. McFarland, Esquire
         The Spitz Law Firm, LLC
         Spectrum Office Tower
         11260 Chester Road, Suite 825
         Cincinnati, OH 45246

        **PLEASE TAKE NOTICE** that on January 8, 2021, pursuant to 28 U.S.C. § 1446,

undersigned counsel for Defendant Goodrich Corporation, a Collins Aerospace Company

("Goodrich"), incorrectly named in Plaintiff Chavez Leath's Complaint as "Raytheon Co. d/b/a

Collins Aerospace & UTC Aerospace,"[1] filed with the Clerk of the United States District Court

for the Southern District of Ohio, Western Division, a Notice of Removal in the above-captioned

action.  Attached as **Exhibit A** is a true and correct copy of the Notice of Removal of this action.

        Pursuant to 28 U.S.C. § 1446, the filing of the Notice of Removal in the United States

District Court for the Southern District of Ohio, Western Division, together with the filing of a

---

[1] Raytheon Co. is no longer an existing legal entity, and the entity "Raytheon Co. d/b/a Collins Aerospace & UTC Aerospace" never existed. During the relevant time period, Plaintiff's employer was Goodrich Corporation.

copy of the Notice of Removal with this Court, effects the removal of this action, and this Court may proceed no further unless and until the action is remanded.

Date: January 8, 2021

Respectfully submitted,

GOODRICH CORPORATION, A COLLINS AEROSPACE COMPANY

By: */s/ Stephen R. Beiting*
    Stephen R. Beiting
    Ohio Bar No. 0088343
    E-mail: sbeiting@seyfarth.com

    SEYFARTH SHAW LLP
    233 S. Wacker Drive, Suite 8000
    Chicago, IL 60606-6448
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000

    *Attorney for Defendant Goodrich Corporation,*
    *a Collins Aerospace Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 8, 2021, a copy of the foregoing

document was served via email and U.S. overnight mail on the following counsel of record:

Matthew G. Bruce, Esquire
Matthew.Bruce@SpitzLawFirm.com
Evan R. McFarland, Esquire
Evan.McFarland@SpitzLawFirm.com
The Spitz Law Firm, LLC
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246

*/s/ Stephen R. Beiting*
Stephen R. Beiting

***Attorney for Defendant Goodrich Corporation, a
Collins Aerospace Company***